Burlington Northern Santa Fe contracted and agreed that any dispute between the parties would be settled, finally settled, by three AAA arbitrators. That is just what three AAA arbitrators did in this 114-page reasoned award issued almost three years ago. Under the Supreme Court's decision in Oxford Health, Burlington Northern must live with and comply with the results of that arbitration. The arbitrator's conclusions that Burlington Northern breached the contract, tried to terminate it in bad faith, had no bad faith termination power, and in bad faith tried to avoid its duty to meet and negotiate a reasonable economic adjustment in an effort to capture Alstom's investment in Burlington Northern's fleet without paying for it, were all issues for the arbitrators to decide. The calculation and characterization of damages were also matters for the arbitrators to decide. And the arbitrators decided these matters by interpreting the contract between the parties. They engaged with its text, they determined its meaning, and they applied the meaning to the facts as they found them. That is exactly what they were empowered to do by the parties. Section 15.2 provides that all disputes will be finally settled by arbitration. 15.6 provides that the arbitrators will decide the dispute in accordance with the terms of the agreement. Section 18.1 provides that the arbitrators will construe the agreement in accordance with Illinois law. That is exactly what they did. Under Oxford Health, that should have been the end of the matter, and it should have led to confirmation of the arbitration award. Now I'm here as the appellant because the district court did not follow Oxford Health, which it did not mention, did not apply the Oxford Health standard or confine itself to its limited role under Oxford Health. Instead, the district court engaged in an interpretive battle with the arbitrators over the meaning of without cause. Whether without cause means in bad faith, or whether as the district court rewrote without cause, it means at any time for any reason. But that battle, that interpretive battle with the arbitrators, was not for the district court to conduct. Its sole question was whether, the sole proper question, was whether the arbitrators even arguably interpreted the contract, which they plainly did here. If the arbitrators even arguably interpreted the contract, the court must confirm the award. I want to make a point about the Oxford Health standard. It is a verb. The question is, did the arbitrators interpret? Did they engage in that activity? It's not a noun. It's not a question about whether the result or the interpretation is arguable. It's whether the activity of the arbitrators is arguably interpretation. If it was, the award must be confirmed. So what's your best evidence that they did? The best evidence is the 114 page award. They engaged with the text on page 29. They say they have endeavored to apply the terms and conditions of the contract. If they found they could not determine the dispute from the terms, then they looked to other sources, such as Illinois law. We have extensive discussion in the award itself, showing the arbitrators engaged with the text and interpreted it. At the very beginning of the arbitration hearing, the chairman, Mr. Hinchey, said we are not a court of equity. We are here to apply the contract. And that's just what they did throughout the arbitration proceeding and in their award. I think that's clear from the arbitration award itself. They did not, in the course of interpreting the contract, they did not ignore the text, simply fail to mention it. They didn't read the wrong agreement, which actually has happened in some cases. They did not act contrary to a stipulated interpretation between the parties, which was the case in Stolt-Nielsen. Nor did they act contrary to their own interpretation of the agreement, saying the agreement means this, but we're going to do something else. This is interpretation through and through, as the Supreme Court said in Oxford Health. Now, the district court faulted the arbitrators for using an Illinois principle of contract interpretation to assist them in their task. But that is expressly allowed by the contract. Article 18.1 directs the arbitrators to use Illinois law to construe the contract. They did not read the agreement as prohibiting them from using interpretive principles. Nor, I submit, would it make sense to hold that an arbitrator cannot use interpretive principles. Now, the district court, I think, also objected to the fact that the covenant is referred to as an implied term under Illinois law. My understanding is, and I'm not sure, but my understanding is Texas law does not recognize the implied covenant, which may have created some of the confusion in the district court. But even if one considers the covenant to be an implied term of the agreement, the arbitrators can still use it. The agreement tells them to decide the dispute in accordance with the terms, not the written, not the explicit, the terms of the contract, which under Illinois law includes the covenant of good faith and fair dealing. In fact, under Burlington Northern's interpretation of the contract, the arbitrators had to use the implied covenant. It is a term. The no modification clause says they cannot subtract from the covenant. So Burlington Northern has now explained how the arbitrators could disregard the implied covenant without violating Burlington Northern's reading of the no modification clause. So I think it is clear from the briefing that the Illinois covenant of good faith and fair dealing is just a contract interpretation principle. The Illinois Supreme Court's been clear on that. The Seventh Circuit applying Illinois law has been clear on that. In fact, you can't even bring, a person can't even bring a separate freestanding claim for breach of the implied covenant under Illinois law. Its sole purpose is to help the court or the arbitrator determine the intent of the parties. Now, in the Rule 28J's submission, the reply in support of Burlington Northern's submission, they make a new argument that the Federal Arbitration Act actually forbids arbitrators from using state law principles of contract interpretation if those principles are founded on the state's notions of public policy. There is no case holding that. Ginsburg, which was a case about airline deregulation, doesn't hold that. Stolt-Nielsen doesn't forbid arbitrators from using state contract law interpretation principles. And it would be odd to say the Federal Arbitration Act actually forbids arbitrators from applying ordinary principles of contract interpretation, in this case Illinois, to a contract which expressly calls for itself to be construed in accordance with the law of Illinois. It would have the odd result that an arbitrator would exceed his or her powers, unless he or she reached a different result from what an Illinois court would, because an Illinois court would be free to apply the covenant, but Burlington Northern claims an arbitrator is not. It's a bizarre result. There is no authority for it, and there is no aspect of coercion in allowing the arbitrators to apply Illinois law to a contract which Burlington Northern agreed would be governed by Illinois law. So it seems the liability determination was clearly based on the arbitrator's contractual interpretation. So, too, was the damage award. The arbitrators interpreted the contract. They awarded ordinary and direct damages for Burlington Northern's breach. They were expressly authorized to award such damages by Section 11.9 of the contract. The arbitrators calculated those damages, awarded them, expressly excluded things that the arbitrators determined constituted lost profits, and awarded Alston damages based upon its out-of-pocket expenditures. So there was no lost profit damage award? Not at all. No. We asked for it and didn't get it, based upon the arbitrator's reading of 11.9. The arbitrators in awarding the damages, too, simply interpreted the agreement and did not exceed their powers. And it's clear, we submit, despite Burlington Northern's arguments, that the arbitrators had interpretive authority in this case. The Texas Arbitration Act does not apply. It was not selected by the parties. And without being, if it was not selected, then the Federal Arbitration Act applies to this contract, which is obviously involving a transaction in interstate commerce, the service of locomotives. Moreover, so the Texas Arbitration Act is not concurrently applicable to every award also governed by the Federal Arbitration Act. Even if it were applicable, the Texas Supreme Court held in NAFTA traders that parties would have to bargain for expanded judicial review. There was no such bargain here for expanded judicial review. Finally, I have to say, I am surprised that a railroad, which operates in every state west of the Mississippi, and some east of the Mississippi, really wants every arbitration award with which it's involved to be judged, both under the federal law and under the law of any state that may happen to have jurisdiction. They won't always be in Texas and have diversity jurisdiction. They may be in Montana State Court under the Montana Arbitration Act. So I think the argument that the Texas Arbitration Act takes away the arbiters' interpretive power is misplaced. Finally, there's an argument that the district court should not have compelled arbitration in the first place. We submit that issue is waived by Burlington Northern's failure to cross-appeal the order of compelling arbitration, which was subsumed in the final judgment. We also think the challenge to the order of compelling arbitration has no merit for the reasons that we explain in our reply brief. For these reasons, the arbitration award should be confirmed at a minimum. The case would have to be remanded to the arbitrators. If the court were to affirm the district court's vacatur of the arbitration award, the appropriate remedy under the Supreme Court's decision is Garvey. It's not a final judgment against Alston. It's a remand to the arbitrators for them to figure out the effects of the district court's interpretation of the agreement between the parties. But we don't believe that any such remand is needed or appropriate here because the arbitrators acted within their interpretive authority in interpreting the agreement, finding the facts, categorizing and calculating the damages. They did not exceed their powers within under Oxford Health. There's no basis to vacate the award. Because there's no basis to vacate the award, it must be confirmed in the language of the Federal Arbitration Act. And so we respectfully request that the court reverse and render judgment confirming the arbitration award. Unless the court has questions. Thank you. Thank you. Ms. Albers. May it please the court. 158. That is how many times Alston uses the words interpret and construe in their briefs before this court. And you heard those words even more just now. But the arbitrators here did not just interpret or construe the maintenance agreement. They quite literally judged it. And they judged its terms unacceptable. Even though it was negotiated between two sophisticated corporate giants. Six months ago, the U.S. Supreme Court in Northwest v. Ginsburg looked at this implied covenant of good faith and fair dealing and found it to be a state-imposed matter of public policy, not a matter of consent between the parties, not a matter of contract interpretation. Indeed, Alston asked for recovery under good faith and fair dealing as a matter of public policy. The arbitrators exceeded their power by imposing their view of the policy of good faith and fair dealing and issuing $55 million in industrial justice against BNSF. Be clear that when the arbitrators interpreted this agreement, BNSF won. There is a critical ruling at record page 850. At that page, the arbitrators say that there was no breach of the termination provision of the contract. But then they go beyond the contract. They apply state-imposed public policy and they overrode the agreed-upon termination provision. They also exceeded specifically limited powers in the agreement. As Judge Means wrote, looking outside the unambiguous termination provision to Illinois law exceeded their powers of interpretation. And he was right. You can affirm Judge Means' judgment based on two recent United States Supreme Court cases, Stolt-Nielsen and Ginsburg. Stolt-Nielsen says it's a matter of federal law for you to look at de novo whether arbitrators are interpreting or dispensing their own brand of industrial justice. It says the FAA imposes basic rules, fundamental rules of importance, that arbitration is a matter of consent, not coercion. And the arbitrators in Stolt-Nielsen proceeded as if they had the authority of common law courts to decide the best rule. Well, that's exactly what the arbitrators did here. This was not contract interpretation. Ginsburg addresses that same question. It looked at this animal of the doctrine of good faith and fair dealing and said, what is this? In that case, the petitioner argued that where Northwest Airlines had a unilateral termination clause, that the doctrine of good faith and fair dealing could be and should be applied to override that termination provision. And the United States Supreme Court said no. It said this doctrine of good faith and fair dealing has no general meaning, that it is a state-imposed matter of public policy. And as a host of arbitration cases hold, arbitrators don't have the power to impose public policy. Let me turn again to record page 850. That is a critical ruling. That was where the actual contract interpretation by the arbitrators ended. What they said is they said they know they can add to or modify the contract. And they say, absent application of the doctrine of good faith and fair dealing, if we are to construe the strict terms and provisions of the agreement, which of course is what they're supposed to do, BNSF has a 30-day right to terminate and the agreed-upon remedy is for BNSF to repurchase Alstom's inventory. They hold it's undisputed that BNSF did repurchase Alstom's inventory. And they say we can't craft another remedy. So they deny $51 million in Alstom's claimed damages for breach of the termination provision. The fact that Alstom's breach of contract claim failed on the merits highlights the fact that they added something else to the agreement via good faith and fair dealing, which Ginsburg instructs is a matter of public policy. They reached outside the contract and imposed this doctrine in violation of the law that arbitrators don't decide public policy, in violation of the limit on their authority that they couldn't add to or change or modify the agreement and could only go to Illinois law if the answer to the dispute wasn't within the agreement. And it was. And it was in violation of the termination provision which said notwithstanding anything to the contrary herein, BNSF has a 30-day without cause right to terminate. So if somehow the doctrine of good faith and fair dealing was implied, if it was herein, it could not be considered because it was contrary to the party's agreement that BNSF had a without cause termination right. How could these sophisticated parties, Alstom's an even bigger corporate giant than BNSF, how could these sophisticated corporate parties have made it any more clear notwithstanding anything to the contrary there is an unfettered 30-day without cause termination right? Don't go to Illinois law. You can't change the words of this document. But that's exactly what the arbitrators did. Most importantly, the arbitrators violated the fundamental precept of arbitration, that it's based on consent, not coercion. They imposed their view of public policy and they imposed their view of what they thought was right. And arbitrators just can't do that. This amorphous doctrine of good faith and fair dealing is just a power given to common law judges in Illinois to look at an agreement and say, hmm, there's unequal bargaining power here. We just don't think this is right. But there is not one case cited by Alstom where an arbitrator was ever, ever used the doctrine of good faith and fair dealing to override the party's agreement, which is exactly what happened here. BNSF won, there's no breach of contract. After that, by imposing public policy, they found liability. Arbitrators just can't do that. Judges in courts can impose public policy, arbitrators cannot, and it's really that simple. At this point in the arbitrators' award, what the contract said didn't matter, and this becomes very evident when you look at their ruling on damages. First, they read the contract as written. If this court will look at record page 892 and 893, they say, under section 11.9, there is a mutual obligation that shields both parties for claims for consequential and incidental damages, including loss of profit or revenue, and allows only ordinary and direct damages. Accordingly, we deny Alstom's claim for $51 million for loss of profits and revenue. But on the next page, record page 894, they then award $55 million for incidental and consequential damages that are prohibited under the contract. The arbitrators say at that page, 894, as a result of BNSF's early termination, Alstom was denied the opportunity to earn additional revenues through the remainder of the contract period, denied the opportunity to earn additional revenues, denied the opportunity to recoup its direct costs and other investments in the fleet. Those are incidental and consequential damages that the arbitrators had no power to give. This court's decisions in Beard and Delta Queen specifically say that parties can limit the type of damages that arbitrators can award, and arbitrators can't manufacture remedies. They manufactured that remedy here. The Beard case had the same no-modification clause that the parties incorporated into their agreement here. You can't add to, subtract, modify. And this court held that was a limit on the arbitrator's power. Oxford Health has nothing to say about limiting arbitral authority. Those cases and a limit of arbitral authority is still viable and valid. Delta Queen, likewise, this court's decision in Delta Queen and United States v. Dellek refining, where Judge Clement, you noted the Delta Queen line of authority from July, an arbitrator cannot fashion an alternative remedy contrary to the remedy provided in the contract. But why weren't they just determining reasonable economic adjustment when they fashioned that award? You say it's lost profits. It's looking forward, but... Well, they did say they were fashioning reasonable economic adjustment, but reasonable economic adjustment was not a contract remedy. It was an obligation for the parties to meet and confer. The contract remedies were ordinary and direct damages, and they were not incidental and consequential damages. So a reasonable economic adjustment is not a contract remedy provided in the contract for breach. It's not even a cognizable breach of contract remedy. It was a mutual obligation to meet and confer if BNSF stored more than 10% of the locomotives. But they didn't confer to award monies to make up for the loss. For storing locomotives. Or not storing, right. Correct. It was not a remedy for breach of early termination of the agreement, which is factually what happened here. The contract was terminated by BNSF without cause, right. Well, it was terminated when they advised that they were no longer going to use the same amount of railroads. They weren't going to get the same amount of money that they'd been getting in the past. So they had to make some sort of adjustment. But instead, they terminated. So you still have that missing quantifiable amount of damages, which I think is what they were trying to get at. No, Your Honor, I disagree. BNSF had a without cause termination, right. So whether it was bad faith or good faith or no faith, that didn't matter. That's fine. But they terminated before they made an adjustment to the change in storage. They were in the process of conferring about an adjustment. But that is not a contract remedy provided in this contract for early termination. And the arbitrators, by somehow looking at the meet and confer obligation about storing locomotives, was manufacturing a remedy that wasn't provided for in the contract. BNSF had paid full price for all the stored locomotives. There wasn't, Alston wasn't out anything on the stored locomotive numbers. They were being paid full price as if those locomotives were operating. And that's undisputed. The arbitrators, by using that as a measure of damages, exceeded their power of interpretation, exceeded their remedial power granted by this contract. They could only award ordinary and direct damages. They could not award incidental and consequential damages. And truthfully, the remedy for early termination was repurchase of Alston's inventory, and that's exactly what BNSF did. So Oxford Health is not the revolution. Alston claims that Oxford Health says that an arbitrator's power comes from the agreement, and the arbitrator is to interpret and construe the agreement. It used some strong rhetoric, good, bad, or ugly, but the law is basically the same. It's always been that an arbitrator's power comes from the contract he is to interpret, and that deference is owed when the arbitrator is actually construing or interpreting the contract. The structure of the arbitrator's decision here shows that they interpreted and construed and found no breach of contract. And it's only when they went beyond that and imposed a public policy obligation that they could possibly have found a violation, and they had no power to do that. That's a question that this Court looks at de novo. Whether Illinois calls it a matter of contract interpretation, there was nothing to interpret. Notwithstanding anything to the contrary, BNSF had a without-cause termination right. If I could point the Court to one more United States Supreme Court case which we cited in our brief, which is relevant to the Court's analysis here, and that's the Mastrobono case. The U.S. Supreme Court in that case says federal law controls whether choosing a choice of law provision, Illinois law here, federal law controls whether that is part of the agreement. Good faith and fair dealing is a power granted to judges, as I've said repeatedly, a power granted to judges to reform contracts when there's unequal bargaining power. Arbitrators have no such power. Mastrobono says that type of power is not a law that is imported into a contract by a choice of law provision. Choosing Illinois general law doesn't incorporate all aspects of that law. Illinois allows judges to impose sanctions, allows judges to issue contempt, allows judges to perform marriages, but that doesn't mean arbitrators can do that. Arbitrators cannot decide policy. Their application of the amorphous doctrine of good faith and fair dealing under Ginsburg, under Stolt-Nielsen, and under Mastrobono exceeded their powers. In closing, the fundamental policy of the FAA is that arbitration is a matter of consent, not coercion. And you decide that de novo without deference to these arbitrators. Whether in reliance on Ginsburg that says the doctrine of good faith and fair dealing is a matter of public policy, or independently you look at what these arbitrators did, it is pure fiction to characterize it as a matter of consent. BNSF did not agree that the arbitrators could just do what they thought was right. They exceeded their power when the arbitrators imposed the doctrine of good faith and fair dealing, which is a public policy matter, and they overrode the terms of the party's voluntary agreement. For these reasons, Judge Means was right, and BNSF prays that the judgment below be affirmed. Thank you. Mr. Hoffman, you have five minutes for rebuttal. Thank you, Your Honor. Just a few quick points in rebuttal. I want to be clear. The damages the arbitrators awarded were not for termination. They were for breach of the reasonable economic adjustment provision, which was a pre-termination breach by Burlington Northern. The arbitrators set aside the termination and then proceeded to award damages for Burlington Northern's breach of the reasonable economic adjustment provision. And the reason why the arbitrators looked to the out-of-pocket backward method of damages that they, backward-looking method of damages that they used was the parties understood that if locomotives were taken out of service, Alstom's opportunity to recoup its investment would be lost. So what's reasonable when Alstom has invested almost $60 million in the fleet? Well, it's reasonable, the arbitrators determined, for Burlington Northern to be ordered to return that value, which they benefited from for the past 10 years, which they benefited from during the arbitration, which they benefited from during the two years this case was in the district court, which they benefit from today. A reasonable economic adjustment would be ordering reliance damages to be paid by Burlington Northern to Alstom. So make no mistake, the damages were not for termination. They were for breach of the reasonable economic adjustment provision. They were for damages. It had nothing to do with the repayment of the, the repayment of the equipment or the spare parts or whatever. Well, it was based upon the extent... That was paid voluntarily, right? I'm sorry. That was paid voluntarily. It wasn't part of this award. The award was for the unrecovered investment in the fleet. That's correct. The monthly locomotive charge was paid when the locomotives were stored at 4.6, which it did not. So it was required to pay. But that was not part of the arbitrator's award. That was simply backward-looking reliance damages. We heard a lot of merits arguments. We heard a lot of merits phrases. There's nothing to interpret. This agreement is clear. Our discretion is unfettered. What are the arbitrators doing? Those arguments are all improper and out of bounds after Oxford Health. There is no interpretive battle between Burlington Northern and the arbitrators. They say what the contract means. As far as page 850 of the record goes, where Burlington Northern claims the arbitrators found the termination was proper, that is not what the arbitrators found. The arbitrators were considering our claim for termination for convenience, which is a term of art in government contracting. Government can terminate, but it must pay. The arbitrators concluded this was not a termination for convenience provision. What they said was, if they say a proper termination without cause or for the convenience of Burlington Northern if exercised consistently with other terms and conditions of the agreement and is in good faith, would only obligate BNSF, acting under section 18.4, to repurchase of Alstom's inventory. That's what they held. They didn't say there's no possible way that Burlington Northern could breach the termination provision, nor did they find that Burlington Northern did not breach the termination provision. They found it was within their power to find that Burlington Northern did breach the termination provision. Northwest Airlines and this public policy point, two things I think are being confused here by Burlington Northern. Arbitrators can't make up their own public policy. No one agrees with that. But that's not what happened in this case. In this case, you have a contract which called upon the arbitrators to apply Illinois law. Illinois has certain contract interpretation principles that are part of its law. The arbitrators applied those contract interpretation principles to this agreement. This is not a case like Northwest, which involved Minnesota's covenant, which unlike Illinois, is not a contract interpretation principle. Unlike Illinois, it is not waivable. And unlike Illinois, it actually can support a separate cause of action. This is purely a contract interpretation principle. Burlington Northern is essentially inviting the courts to get in the business of deciding is this state's contract interpretation principle based on the state's view of public policy? Good public policy or not? And if it is based upon good public policy, then arbitrators can't use it. That doesn't make any sense. This agreement called upon the arbitrators to use Illinois law to interpret and construe the contract without any limitations. That's what they did. Under Oxford Health, the inquiry ends there. One of the provisions of this agreement was that Burlington Northern would comply forthwith with the arbitration award. That has not happened. Because the arbitrators did not exceed their authority, we respectfully request the court reverse and render judgment confirming the award. Unless the court has questions. Thank you, Your Honor.